IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *EX REL.*, CYNTHIA I. FITZGERALD, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-1589-N |
| | § | |
| NOVATION, L.L.C., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendants Novation, L.L.C. ("Novation") and VHA, Inc.'s ("VHA") motion to dismiss [107], Defendant Heritage Bag Company's ("Heritage Bag" or "HB") motion to dismiss [113], and Defendant Becton Dickinson & Co.'s ("Becton Dickinson" or "BD") motion to dismiss [117]. For the reasons given below, the Court grants in part and denies in part these three motions.[1]

---

[1]The Court further grants Relator's motion for leave to file a consolidated brief in opposition [129] and denies as moot Novation and VHA's motion to strike Relator's "Rule 56.4 Response" [136]. Although the Court disapproves of Relator's submission of two lengthy response briefs, the Court need not strike her Rule 56.4 Response because it contains substantially the same information as the statement of facts Relator provided in her brief in opposition to Defendants' motion to dismiss. Defendants will not be prejudiced by consideration of Relator's superfluous brief.

ORDER – PAGE 1

## I. ORIGINS OF THIS QUI TAM ACTION

Relator Cynthia I. Fitzgerald worked for Defendant Novation[2] for approximately six months between July 1998 and February 1999. Novation is a group purchasing organization ("GPO") that purchases medical supplies on behalf of a large, nationwide network of hospitals. GPOs form to pool the purchasing power of their members and use group volume as leverage to negotiate contracts with vendors to supply medical products for prices lower than would otherwise be available to member hospitals.

In her complaint, Relator alleges that, rather than acting strictly in the best interests of its member hospitals, Novation used its leverage to extract kickbacks from vendors in exchange for awarding large supply contracts. Relator proposes that these kickbacks took one of two forms. First, she alleges that Novation solicited and accepted improper up-front payments from vendors, and Novation favored companies promising to make these payments when awarding contracts. Second, she alleges that Novation extracted kickbacks by soliciting and accepting excessive administrative or marketing fees from vendors, and Novation favored companies promising to pay high fees when awarding contracts. According to Relator, Novation often accomplished this by encouraging certain vendors to sell their products through Novation's own private label, NOVAPLUS, at inflated prices. Relator alleges that Novation shared in the profits from this increased pricing by accepting extraordinarily high administrative fees from NOVAPLUS vendors.

---

[2]Defendant VHA is one of Novation's parent corporations.

ORDER – PAGE 2

According to Relator, in order to afford these kickbacks, vendors hoping to do business with Novation inflated the prices they bid for their supplies above what they would have bid absent collusion. Novation then passed these inflated prices along to its hospital customers, who purchased and used the supplies and in turn passed inflated prices along to the United States and Texas governments when they submitted claims for reimbursement to federal and state healthcare programs including Medicare and Medicaid.[3] Relator does not contend that Novation shared these kickbacks with its member hospitals; instead she alleges that Novation concealed this practice from its customers, who unwittingly submitted claims for payment that were tainted by kickbacks.

Relator alleges that during her employment with Novation, she observed and heard about conduct that led her to uncover Novation's kickback scheme. However, during her brief stint at Novation, Relator oversaw only one complete bid – a contract for catheters that Novation awarded to Defendant Becton Dickinson. Relator alleges that during the bidding process for this contract, she solicited kickbacks from catheter bidders in the form of donations to a Novation intranet project. Based at least in part on Relator's own recommendation, Novation eventually awarded the contract to BD, which bid the lowest price, but also agreed to donate $100,000 to the intranet project. Relator further alleges that,

_____

[3]Hospitals (but none of the defendants per se) who submit claims for Medicare reimbursements to the government must also submit an annual Cost Report, which includes a certification of compliance with applicable instructions. Applicable instructions require services to comply with Medicare program requirements, including prohibitions against kickbacks. *See* 42 U.S.C. § 1320a-7b(b) (2000).

in deciding how to award the contract, Novation took into consideration that BD offered to pay a 9% administrative fee, which was higher than other bidders.

Relator began work on a second bid – a contract for can liners that Novation later awarded to Defendant Heritage Bag. After beginning work on the can liner bid, Relator requested that Novation remove her from the project, citing ethical concerns. Soon after, she received negative performance reviews. Novation terminated her employment in February 1999, before any vendors submitted bids on the can liner contract. Nonetheless, Relator alleges that during the time she worked on the bid, she learned from other Novation employees that HB always won this contract, and would continue to do so indefinitely regardless of the bids received. Relator also alleges that she knows from her work on this project that at least three vendors had lower prices than HB, which won the deal at least in part because of HB's offer to pay high fees.

Finally, Relator alleges that a number of colleagues working elsewhere in the healthcare industry shared with her their knowledge of Novation's kickback scheme. However, as discussed below, the Court holds that Relator was not an original source of this information and therefore finds it unnecessary to provide a detailed account of these allegations, which rely on second-hand information.

In late 1998, Relator spoke to attorneys in the U.S. Department of Justice's Dallas office about the information she obtained while working for Novation. They referred her to the Department's Criminal Antitrust Division in Philadelphia. She spoke with an attorney from that office in January 1999. The government never pursued her allegations.

In early 2002, the United States Senate, the General Accounting Office, and the news media began publicly to question Novation's business practices. These practices also became the subject of an antitrust lawsuit, during the course of which Relator was subpoenaed to give deposition testimony in June 2002. Her deposition spawned additional media disclosure of Novation's conduct.

Relator filed this qui tam action in 2003, on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729–3733 (2000) ("FCA"), and on behalf of the State of Texas under the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code §§ 36.001–36.117 (Vernon 2001). Her complaint remained sealed until May 2007, when both the United States and the State of Texas notified the Court they declined to intervene in the case.[4] Defendants now move to dismiss Relator's claims on several grounds.

## II. Most of Relator's Allegations Fail to Survive the False Claims Act's Subject Matter Jurisdiction Threshold

The Court has subject matter jurisdiction only over Relator's claims pertaining to the Becton Dickinson catheter contract.[5] The Court lacks subject matter jurisdiction over her

---

[4]Under the FCA, a relator must provide the information on which she bases her qui tam claim to the government, permitting the government an opportunity to intervene before proceeding with the action. 31 U.S.C. § 3720(b) (2000).

[5]In a qui tam action such as this, the FCA establishes both the cause of action and the Court's subject matter jurisdiction. As a result, the jurisdictional inquiry and the merits are intertwined and the Court will treat Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) as a motion for summary judgment under Rule 56(c). *See United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 350 (5th Cir. 2003), *abrogated on other grounds by Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397 (2007).

claims pertaining to the Heritage Bag can liner contract, therefore all claims against Defendant HB are dismissed. Any claims against the remaining defendants that are unrelated to the catheter contract are also dismissed for lack of subject matter jurisdiction because Relator is not an "original source" of information underlying those claims, as the Court will discuss below.

To encourage private citizens to expose fraud against the government, while preventing them from filing "parasitic suits," the FCA limits courts' jurisdiction to hear qui tam suits "when the allegations of fraud are based on information that has been publicly disclosed in a 'criminal, civil, or administrative hearing, in a congressional, administrative, or Governmental Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.'" *United States ex rel. Fried v. West Indep. Sch. Dist.*, 527 F.3d 439, 441 (5th Cir. 2008) (quoting 31 U.S.C. § 3730(e)(4)(A) (2000)). Accordingly, the FCA prohibits a private relator from bringing an FCA claim filed after public disclosure of her allegations if that claim is "based upon" a public disclosure, unless the relator qualifies as an "original source" under the FCA. 31 U.S.C. § 3730(e)(4)(A); *Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397, 1405 (2007); *Fried*, 527 F.3d at 441–42. Here, the parties do not dispute that the media and other sources publicly disclosed the information underlying Relator's allegations before she filed suit. Therefore, the Court must determine whether any of her claims are "based upon" the public disclosures and if so, whether Relator is nonetheless an "original source" of the information underlying her claims.

### A. Relator's Claims Are "Based Upon" Publicly-Disclosed Information

The Court holds that all of Relator's claims are "based upon" widespread public disclosure of Defendants' allegedly fraudulent conduct because at least part of the information underlying each claim was substantively identical to and supported by information that had already been publicly disclosed at the time she brought this action. The "based upon" standard is not onerous. FCA allegations are "based upon" public information so long as those claims "are based at least in part on allegations already publicly disclosed," even if the relator "uncovered some nuggets of new, *i.e.*, non-public, information." *Fried*, 527 F.3d at 442; *see also Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 451 (5th Cir. 1995) ("[A]n FCA qui tam action *even partly based upon* publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transaction[s].'" (emphasis in original) (quoting *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992))). Whether the relator was aware of the public disclosure before filing suit or whether the relator's claims derive from the public disclosure is irrelevant. While the Fifth Circuit has not specifically defined the term "based upon" in this context, it has implicitly adopted the standard a majority of other circuits have stated, i.e., that a relator's allegations are based upon publicly-disclosed information if they are "substantively identical to" or "supported by" a public disclosure, whether or not the relator's claims derive from the public disclosure. *See Fed. Recovery Servs.*, 72 F.3d at 451 (relying on the majority definition of the term "based upon," as stated in *Wang v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992), *United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d at 552,

and *Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 567 (11th Cir. 1994)). Here, both sides essentially concede that media reports and other sources disclosed, at least in part, the substance of Relator's allegations before she filed suit.

### B. Relator Is an "Original Source" Only of Information Derived in the Course of Her Employment on the BD Catheter Contract

The Court holds that Relator is an original source of information that forms the basis of her claims only regarding the BD catheter contract because she has direct and independent knowledge of this information. To qualify as an original source, a relator must demonstrate that her knowledge of the information forming the basis of her FCA claims is direct, or "firsthand," and independent, i.e., does not "depend or rely on the public disclosures." *Fried*, 527 F.3d at 442–43 (quoting *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 690 (D.C. Cir. 1997)). A relator must also demonstrate that she has "voluntarily provided the information to the Government before filing an action . . . based on the information." *Fed. Recovery Servs.*, 72 F.3d at 451. Here, the parties do not dispute that Relator voluntarily provided her information to the government before she filed this action. The only remaining question is what part of her knowledge was direct and independent.

Viewing the evidence and inferences drawn from the evidence in the light most favorable to Relator, the Court has determined that Relator has alleged direct and independent knowledge of the $100,000 check Novation received from BD and other documents and circumstances Relator personally created or observed relating to the check, the catheter bids, and the resulting contract between BD and Novation. Relator has not

alleged direct and independent knowledge of any information underlying her claims regarding the other BD contracts or bids or the HB contract or bid.  Direct knowledge is information a relator acquires first-hand, "from the source without interruption" or through "the relator's own efforts rather than . . . second-hand through the efforts of others." *Laird*, 336 F.3d at 355 (citing WEBSTER'S NEW INTERNATIONAL DICTIONARY 640 (3d ed. 1961)); *see also Fried*, 527 F.3d at 442.  Independent knowledge is information a relator obtains without depending or relying on public disclosures.  *Fried*, 527 F.3d at 443; *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 177 (5th Cir. 2004); *Laird*, 336 F.3d at 355.  Relators with direct and independent knowledge have generally viewed first-hand the source documents or fraudulent activity that forms the basis of their claims.  *United States ex rel. Lam v. Tenet Healthcare Corp.*, 2008 WL 2835215, at *4–5 (5th Cir. 2008) (contrasting cases where successful relators had first-hand knowledge and cases where unsuccessful relators acquired their information through other persons or sources).

Relator has met her burden to show that she has direct and independent knowledge of information she directly observed in the course of her employment at Novation, i.e., information from documents and activities she personally witnessed during her work on the BD catheter contract.  She cannot meet this burden as to information she overheard from others or obtained second-hand either during or after her employment with Novation, including the information she uses to support her other claims against BD and HB.  The length of time she worked on the can liner project is irrelevant to determining what

ORDER – PAGE 9

knowledge Relator directly and independently acquired during her work on this project. However, the fact that Relator has only provided allegations and evidence of information she obtained from others and from documents that did not exist at the time of her employment indicates that Relator lacks direct and independent knowledge of information relating to the can liner contract even viewing the evidence in the light most favorable to her. Relator's attempt to characterize herself as a "paradigmatic" original source with respect to all relevant information merely due to her status as a former Novation employee falls flat, particularly in light of the Supreme Court's decision in *Rockwell International v. United States*, where the Court made clear that employment without specific, personal observation and knowledge is insufficient to qualify a relator as an original source. 127 S. Ct. at 1409–10. Relator's complaint and her brief in response to Defendants' motions to dismiss rely in no small degree on information and allegations she acquired from "interactions with others," documents that others wrote and Relator never saw during her employment at Novation, and other information that did not even exist at the time of her termination. The Court holds that under the FCA, Relator is not an original source of such information. All claims based on that information are dismissed for lack of subject matter jurisdiction.

### III. RELATOR HAS STATED A CLAIM UNDER THE FCA

Relator has stated a claim in connection with the BD catheter contract because, viewing the facts in the light most favorable to her, the $100,000 check from BD to Novation could be considered a kickback, thereby forming the basis of a claim against the remaining defendants. Since Relator has stated some claim upon which relief could be granted, it is

unnecessary to determine for the purposes of this motion to dismiss whether Relator has also stated a claim based on the administrative fees BD paid to Novation in conjunction with the catheter contract.

### A.  Standard for Rule 12(b)(6) Motion to Dismiss

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).  In ruling on a Rule 12(b)(6) motion, the court must limit its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### B. Relator Has Alleged that Defendants Novation, VHA, and BD Caused Hospitals to Submit False Certifications to the Government

Relator states a claim under the FCA if Relator shows Defendants knowingly assisted in causing hospitals to make false certifications by paying and receiving kickbacks, thereby failing to comply with Medicare regulations. The FCA applies to any defendant who "knowingly assist[s] in causing the government to pay claims grounded in fraud, without regard to whether that person ha[s] direct contractual relations with the government." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 378 (5th Cir. 2004) (alterations in original) (internal quotation marks omitted) (quoting *Peterson v. Weinberger*, 508 F.2d 45, 52–53 (5th Cir. 1975) (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 544–45 (1943))); *see also* 31 U.S.C. § 3729(a)(2) (2000); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) [hereinafter *Thompson II*] (holding that "the FCA imposes liability not only on any person who submits a false or fraudulent claim for payment, but also on any person who makes a false statement in order to get a false or fraudulent claim paid").[6] Relator's allegation that

---

[6]In *Hess*, the Supreme Court held a third party liable for conspiring to present a false claim. 317 U.S. at 545. Unlike in *Hess*, where the party who actually submitted the claim participated in the fraud, Relator alleges that Defendants caused innocent hospitals to submit false claims. While none of the parties in *St. Luke's* were innocent, the Fifth Circuit uses broad language that this Court construes as applicable to a defendant who causes an innocent party to submit a false claim. *St. Luke's*, 355 F.3d at 378 (explaining that a defendant "'need not be the one who actually submitted the claim forms in order to be liable'" (quoting *United States v. Mackby*, 261 F.3d 821, 827 (9th Cir. 2001))). Citing the Fifth Circuit's decision in *St. Luke's*, at least one other district court held that a relator could bring an FCA claim against a defendant that caused a hospital to unwittingly make a false certification. *United States ex rel. Fry v. Guidant Corp.*, 2006 WL 2633740 (M.D. Tenn. Sept. 13, 2006); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 12, 15–16 (D. Mass.

Defendants knowingly caused hospitals to submit false claims to the government is sufficient
to preclude dismissal for failure to state a claim against these defendants so long as Relator
has also alleged a set of facts to support her argument that a kickback and therefore a false
certification actually occurred.

### C. Relator Has Alleged that BD Paid and Novation/VHA Received a Kickback in Violation of the Medicare Anti-Kickback Statute

Taking as true, for purposes of evaluating Defendants' motions to dismiss, Relator's
allegation that BD intended its $100,000 payment to Novation to induce the catheter bid
award, it is a kickback, which would have resulted in a false claim under the FCA when
hospitals falsely certified compliance with the Medicare anti-kickback statute. *See* 42 U.S.C.
§ 1320a-7b(b) (2000). To state a claim under the FCA, a relator must demonstrate that (1)
a claim was presented to the government for payment, (2) the claim was false or fraudulent,
and (3) the defendant knew the claim was false. 31 U.S.C. § 3729 (2000); *United States v.
Medica-Rents Co.*, 285 F. Supp. 2d 742, 769 (N.D. Tex. 2003).[7] When the government

---

2007) (relying in part on *Hess* to deny a drug manufacturer's motion to dismiss when the
government alleged the manufacturer caused medical providers to—presumably
unwittingly—submit false claims). Even if the actual claimant's knowledge were necessary,
an argument could be made that hospitals in this case were not "innocent" because they own
VHA and through VHA, own Novation.

[7]As this Court previously noted, the Fifth Circuit has rejected an additional
requirement that the United States have suffered damages as a result of the false or fraudulent
claim. *See United States v. Medica-Rents Co.*, 285 F. Supp. 2d 742, 769 n. 60 (N.D. Tex.
2003) (citing *United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F. Supp. 2d 601, 619
n. 10 (S.D. Tex. 2001)); s*ee also Rex Trailer Co. v. United States*, 350 U.S. 148, 152–53
(1956); *Ridglea State Bank*, 357 F.2d 495, 497 (5th Cir. 1966); *U.S. ex rel. Thompson v.
Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017, 1047 (S.D. Tex. 1998) [hereinafter
*Thompson III*].

ORDER – PAGE 13

conditions its payment of a claim on a claimant's certification of compliance with applicable statutes or regulations, and the claimant falsely certifies compliance, the claimant has presented a false or fraudulent claim. *Thompson II*, 125 F.3d at 902. Here, Relator alleges that because hospitals used some of the catheters purchased under the BD contract on Medicare patients, and because Defendants' kickbacks falsely inflated the price of those catheters, they knowingly caused the hospitals to falsely certify compliance with the Medicare anti-kickback statute. Relator has provided evidence that several specific hospitals made false certifications of compliance with this statute by presenting reimbursement claims to the government for these catheters, that the government conditioned its reimbursement of Medicare claims on these certifications, and that the government would not have paid the claims based on these certifications if it knew of the alleged kickbacks. As a result, the Court denies Defendants Novation, VHA, and BD's Rule 12(b)(6) motions to dismiss claims related to the catheter bid and contract.

## IV. RELATOR HAS PLEAD FRAUD WITH PARTICULARITY

The Court holds that Relator has plead her fraud claims with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. In a qui tam action, a relator must state with particularity the circumstances constituting fraud under the FCA. *See Thompson II*, 125 F.3d at 903. Generally, the relator must set forth the "'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)); *see* FED. R. CIV. P. 9(b). Here, Relator has stated the basic framework of an allegedly fraudulent scheme among Defendants, including the parties, contents, time, place, and

ORDER – PAGE 14

procedures giving rise to Relator's fraud claim.  As the Southern District of Texas held in

*Thompson III*, a relator who has met these requirements is entitled to discovery before the

Court will require her to list each false claim, its dates, and the exact amount the government

overpaid on each claim.  *See Thompson III*, 20 F. Supp. 2d 1017, 1049 (S.D. Tex. 1998).

### V.  THE PARTIES APPEAR TO AGREE THAT RELATOR'S RETALIATION CLAIMS ARE BARRED

Applicable periods of limitation bar Relator's employment retaliation claims against

Novation and VHA.  *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (noting that

a statute of limitations defense may support dismissal under Rule 12(b)(6)).  The FCA does

not provide a statute of limitations applicable to retaliation claims brought under 31 U.S.C.

§ 3730(h), the retaliation provision of the FCA.  Instead, courts are to apply the most closely

analogous state limitations period.  *Graham County Soil & Water Conservation Dist. v.*

*United State*s *ex rel. Wilson*, 545 U.S. 409, 417–19 (2005).  The most closely analogous

limitation periods in Texas are a two year limitation period on personal injury actions under

TEX. CIV. PRAC. & REM. CODE § 16.003(a) (Vernon 2002), and a ninety day limitation period

on retaliation actions under the Texas Whistleblower Act, TEX. GOV'T CODE § 554.005

(Vernon 2004).  *See Graham Co.*, 545 U.S. at 419 n. 3 (suggesting that these two statutes

provide the most "likely analogous" limitations periods in Texas).  Defendants' motion to

dismiss states, and Relator does not controvert, Relator filed her retaliation claim more than

four years after her employment with Novation ended.  As a result, Relator's employment

retaliation claim is dismissed as time-barred.[8]

## VI. RELATOR'S CLAIMS UNDER THE TEXAS MEDICAID FRAUD PREVENTION ACT ARE DISMISSED BECAUSE TEXAS FAILED TO INTERVENE

The Court dismisses Relator's state law claims because the state did not intervene.

Section 36.102(c) of the Texas Human Resources Code, as applicable to the conduct at issue

in this case, provides that the state may elect to intervene in an action under the Texas

Medicaid Fraud Prevention Act "not later than the 60th day after the date the attorney general

receives the petition and the material evidence and information."  TEX. HUM. RES. CODE §

36.102(c) (Vernon 2001).[9]  Section 36.104(a), as applicable to the conduct at issue in this

case, states that no later than the 60th day prescribed in Section 36.102(c), the state *shall* "(1)

proceed with the action; or (2) notify the court that the state declines to take over the action."

TEX. HUM. RES. CODE § 36.104(a) (Vernon 2001) (emphasis added).  "If the state declines

to take over the action, the court shall dismiss the action." TEX. HUM. RES. CODE § 36.104(b)

(Vernon 2001).[10]  Not only have the sixty days passed during which the state could have

---

[8]Even if her retaliation claim were not barred by applicable periods of limitation, it would be barred by the voluntary settlement agreement Relator entered into with Novation upon her termination.  Furthermore, considering that Relator chose not respond to Defendants' arguments that her retaliation claim should be barred, she appears to have abandoned it.

[9]The legislature has amended Section 36.102(c) to allow the state 180 days to intervene when conduct at issue occurred on or after September 1, 2005.  The law in effect when Relator was terminated in February 1999 applies to this action, although the difference is immaterial considering the additional time the Court allowed the state in this case.

[10]The legislature has amended Section 36.104(b) to allow a relator to proceed without the state's participation, but only when the conduct at issue occurred on or after May 4, 2007.

ORDER – PAGE 16

elected to intervene in this action under Section 36.102(c), an additional 1080 days, or three years, have passed during which the Court granted the state six extensions of time to decide whether to intervene and proceed with the action or to notify the court that the state declines to take over the action.  Under Texas law, the state had two choices:  to intervene in the action or to decline to intervene.  TEX. HUM. RES. CODE § 36.104(a) (Vernon 2001).  Relator argues that the state did not actually decline to take over the action by filing its Notice of Non-Intervention [41], and that instead, the notice merely reflects that the state has not yet made a decision on whether to intervene.  However, neither Section 36.102 nor Section 36.104 provided the state the option of waiting indefinitely before deciding whether to intervene.  The state's notice certainly did not indicate an intent to intervene.  The only other option available to the state under Section 36.104(a) was to decline to intervene.  Despite any ambiguous language in the state's notice, the Court construes it as notice that the state declined to intervene in this action.  Accordingly, the Court dismisses Relator's state law claims under Texas Medicaid Fraud Prevention Act pursuant to Section 36.104(b).

**VII. CONCLUSION**

Accordingly, for the reasons given above, the Court grants Defendant Heritage Bag's motion to dismiss, denies Defendants Novation, VHA, and Becton Dickinson's motions to dismiss Relator's claims that are based on the BD catheter contract, and grants these Defendants' motions to dismiss Relator's remaining claims.

---

TEX. HUM. RES. CODE § 36.104(b) (Vernon Supp. 2008).

ORDER – PAGE 17

Signed September 17, 2008.

David C. Godbey
United States District Judge

ORDER – PAGE 18