UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* CYNTHIA I. FITZGERALD,                    ) ) ) | No. 3 03 CV 1589N ECF |
| Plaintiffs,      ) ) | |
| v.                    ) ) | |
| NOVATION, LLC, *et al.*,                    ) ) | |
| Defendants.      ) ) | |

**[REDACTED VERSION]**

**PLAINTIFF/RELATOR'S BRIEF IN SUPPORT OF MOTION TO COMPEL AND TO EXTEND DEADLINE FOR COMPLETION OF FACT AND EXPERT DISCOVERY**

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS .................................................................................. 2

        A.      The Claims in This Case ......................................................................... 2

        B.      Defendants' Document Production Has Corroborated Several Types of Payments From BD to Novation In Exchange For Contract Awards in Violation of the Anti-Kickback Statute ................................................................................................. 3

                1.      BD's offer and up-front ▆▆▆▆ payment to Novation ......................... 3

                2.      BD up-front ▆▆▆▆ payment to Novation for "▆▆▆▆ ▆▆▆▆▆" ........................................................................................... 4

                3.      BD's up-front ▆▆▆▆ payment to Novation to "▆▆▆" ▆▆▆▆▆▆ ........................................................................................... 5

        C.      Defendants' Document Production Indicates That Defendants Did Not Comply With the Anti-Kickback Statute Safe Harbor ........................................... 5

        D.      The Blanket Objection At Issue ............................................................. 6

III.    ARGUMENT ...................................................................................................... 7

        A.      Legal Standards ...................................................................................... 7

        B.      The Court Should Compel Defendants to Comply With Their Discovery Obligations ............................................................................................. 9

                1.      Documents relating to Defendants' compliance efforts are relevant to their state of mind even if they do not specifically relate to the BD catheter contract .............................................................................. 9

                2.      BD payments to Novation contemporaneous with, or explicitly to induce, other contract awards support an inference that BD's cash payments and the award of the catheter contract are connected .................................... 12

                3.      Defendants' training materials and policies for the award of contracts are relevant to Defendants' disputed practice of soliciting payments in exchange for contract awards ............................................................ 14

                4.      Defendants' educational materials concerning the anti-kickback statute and the safe harbor are relevant to Defendants' scienter ...................... 16

5.   Fitzgerald is entitled to elicit a pattern of ███████████ sponsorship payments by winning bidders to support the inference that BD's sponsorship payment was in exchange for its contract award .................. 17

C.   Defendants' Discovery Delays Require an Extension of the Deadlines for Fact and Expert Discovery ........................................................................................... 18

IV.   CONCLUSION .................................................................................................................. 20

001857-11 302887 V1

# TABLE OF AUTHORITIES

## CASES

*Burns v. Thiokol Chem. Corp.,*
    483 F.2d 300 (5th Cir. 1973)..................................................................................... 7

*Cappetta v. GC Servs. Ltd. P'ship,*
    2008 U.S. Dist. LEXIS 103902 (E.D. Va. Dec. 24, 2008)............................................... 12

*Coughlin v. Lee,*
    946 F.2d 1152 (5th Cir. 1991)..................................................................................... 7

*Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.,*
    2009 U.S. Dist. LEXIS 30970 (S.D. Tex. Mar. 19, 2009)........................................... 7, 8

*In re Fosamax Prods. Liab. Litig,*
    2008 U.S. Dist. LEXIS 44323 (S.D.N.Y. June 5, 2008)................................................. 12

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,*
    894 F.2d 1482 (5th Cir. 1990)..................................................................................... 8

*Merrill v. Waffle House, Inc.,*
    227 F.R.D. 467 (N.D. Tex. 2005) ............................................................................. 7, 8

*Ramirez v. County of Los Angeles,*
    231 F.R.D. 407 (C.D. Cal. 2005) ................................................................................ 12

*Roesberg v. Johns-Manville Corp.,*
    85 F.R.D. 292 (E.D. Pa. 1980) ................................................................................... 12

*Roland v. United States,*
    838 F.2d 1400 (5th Cir. 1988)..................................................................................... 8

*SEC v. Brady,*
    238 F.R.D. 429 (N.D. Tex. 2006) ................................................................................ 7

*Scott v. Leavenworth Unified Sch. Dist. No. 453,*
    190 F.R.D. 583 (D. Kan. 1999).................................................................................... 8

*Stevens v. Federated Mut. Ins. Co.,*
    2006 U.S. Dist. LEXIS 51001 (N.D. W. Va. July 25, 2006) .......................................... 12

*United States v. Davis,*
    132 F.3d 1092 (5th Cir. 1998)..................................................................................... 3

*United States v. Medica-Rents Co.*,
    285 F. Supp. 2d 742 (N.D. Tex. 2003)................................................................................9

*Walker v. Federal Deposit Ins. Corp.*,
    970 F.2d 114 (5th Cir. 1992)...........................................................................................8

## STATUTES

31 U.S.C. § 3729(b) ......................................................................................................................9

42 U.S.C. § 1320............................................................................................................................3, 5

001857-11 302887 V1

# I.      INTRODUCTION

Plaintiff Cynthia I. Fitzgerald moves to compel Defendants Novation, LLC and VHA,

Inc. ("Defendants") to produce documents withheld from discovery in violation of Fed. R. Civ.

P. 26(b)(1).  Defendants have improperly refused to produce documents related to five areas:

- Defendants' compliance program;

- Payments by Becton Dickinson and Company ("BD") made in exchange for sole
  source awards of related contracts;

- Training materials and policies regarding soliciting payments in exchange for
  contract awards;

- Educational materials received by Defendants' contracting officials regarding the
  anti-kickback statute and the GPO safe harbor; and

- Defendants' practices regarding soliciting bidders to make donations to their
  program to develop an intranet "marketplace."

These documents are relevant to the existence of a policy by Defendants to solicit

payments in exchange for contract awards, which Defendants dispute.  In addition, they are

relevant to Defendants' scienter, *i.e.*, whether Defendants knew, recklessly disregarded, or

deliberately ignored the law in soliciting payments from BD in exchange for the award of the IV

catheter contract.  Because the documents tend to make the existence of a fact that is of

consequence to the determination of this action more or less probable than it would be without

the evidence, Defendants must produce them.  Fed. R. Evid. 401.

In addition, Plaintiff seeks an extension of the deadline for fact and expert discovery to

account for Defendants' discovery delays.  An extension of discovery deadlines is required for

three reasons:  (1) Defendants have not yet begun to produce electronically stored information in

response to Plaintiff's First Request for Production of Documents, which was served roughly six

months ago on December 19, 2008; (2) Defendants have improperly refused to produce relevant

documents in response to Plaintiff's requests for production, necessitating this motion to compel;

and (3) Defendants have refused to produce corporate designees to respond to Plaintiff's April 10, 2009 Rule 30(b)(6) Notice of Deposition until June 9, 2009, just 24 days before the close of fact discovery.

More than five of the seven months the Court permitted for fact discovery have expired without Defendants producing relevant documents requested long ago or a single deposition witness. Defendants' delays have made it impossible for Plaintiff to complete fact discovery by July 3 and serve expert reports on July 31, 2009, as currently provided for in the Scheduling Order. For these reasons, Plaintiff respectfully requests that the Court extend the deadline for completion of fact discovery by 90 days and the expert-related deadlines by 30 days.[1] Further, Plaintiff requests that the Court compel Defendants to produce responsive electronically stored information and other documents in conformity with the Court's Order on this motion within 14 days of that Order.

## II.     STATEMENT OF FACTS

**A.     The Claims in This Case**

Relator Cynthia Fitzgerald alleges that Defendants Novation, LLC and VHA, Inc., affiliated hospital group purchasing organizations, solicited cash and in-kind payments from health care supply vendors in exchange for contract awards. In particular, Novation solicited money and other benefits from medical device manufacturer Becton Dickinson and Company ("BD") in exchange for awarding BD a Novation contract to supply IV catheters and IV Start Kits to the customers of Novation and its affiliated companies. These payments were not properly disclosed to the purchasers of BD's products under the contract as required by law. *See*

---

[1] Counsel for Defendants has consented to a 30-day extension for expert-related deadlines in this case and therefore this portion of Plaintiff's requested relief is unopposed.

42 U.S.C. § 1320a-7b(b)(3)(C). The payments increased the cost of hospital and other health care providers' supplies that were reimbursed by the United States under the Medicare program.

Fitzgerald contends that these cash and in-kind payments violated the anti-kickback statute, 42 U.S.C. § 1320a-7b(b), which prohibits in most circumstances parties' solicitation or payment of any kind of remuneration in exchange for the referral of products or services the cost of which is reimbursed by the government. *See United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998). Parties that pay and receive such kickbacks are deemed to have caused the resulting false claims that occur when health care providers certify to Medicare that the supplies for which they seek reimbursement were not tainted by kickbacks. Order [on Motions to Dismiss] dated September 17, 2008 at 12-14 (Dkt. No. 152).

**B.    Defendants' Document Production Has Corroborated Several Types of Payments From BD to Novation In Exchange For Contract Awards in Violation of the Anti-Kickback Statute**

> **1.    BD's offer and up-front ██████ payment to Novation**

001857-11 302887 V1



[2]

Novation awarded BD the catheter contract (the first listed above).[3]  Not only did

Novation award BD this contract, it awarded BD ████████████████████████

████████████████████.  *See* PA 8-9, 64 (BDCF 00004766-67, BDCF

00000123).  ████████████████████████████████████

████████████████████████████████████.  *Id.* at

PA 9 (BDCF 00004767).

    **2.**      **BD up-front ████████ payment to Novation for "██████████████"**

Other documents produced by Defendants contain evidence of apparent kickbacks.

Novation has now produced the actual contract it signed with BD.  "███████████████

████████████████████████████████████████

████████████████████████.

    The list includes more than the 3% fee on all safety and standard catheters and 9% fee on

all NovaPlus products purchased by Novation's members and customers.  In addition, ██████

████████████████████

████████████████████
████████████
████████████

---

[2] All exhibits referenced herein are attached to Plaintiff/Relator's Appendix in Support of Motion to Compel and to Extend Deadline for Completion of Fact and Expert Discovery ("PA"), at PA 5-6.

[3] Defendants Novation, LLC and VHA, Inc.'s Answer (Dkt. No. 167) (hereinafter "Answer"), ¶ 116.



[REDACTED].[4]

3.   **BD's up-front** ████ **payment to Novation to** ████████████████

Novation allegedly solicited a donation to the intranet Novation was developing in

exchange for the contract award.[5]  The documents produced by Defendants ████████

████████████████████████████████████████████████████████████████████████████

████████████████████.  PA 11 (BDCF 00006957).

C.   **Defendants' Document Production Indicates That Defendants did not Comply With the Anti-Kickback Statute Safe Harbor**

On May 6, 2009, Defendants produced ████████████████████████████████

████████████████████████████████████████████████████████████.[6]  The

anti-kickback statute GPO safe harbor requires ████████████ to make stringent disclosures of

fees.  *See* 42 U.S.C. § 1320a-7b(b)(3)(C)(1).  The documents Defendants produced contain

████████████████████████████████████████, after the expiration of the original

term of the catheter contract.  ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████.[7]

---

[4] PA 11 (BDCF 00006957).

[5] Second Amended Complaint for Violations of the Federal False Claims Act and Texas Medicaid Fraud Prevention Act (Dkt. No. 97-2) (hereinafter "SAC"), ¶ 115.

[6] PA 66-94 (Letter dated May 6, 2009 from Colin D. Speaker to Jeffrey T. Sprung and Hannah Sholl and NOV004794-4822).

[7] PA 74-75, 78-79 (NOV004801-02, NOV004805-06).

001857-11 302887 V1

████████████████████████████████████████████

████████████████ [8] ████████████████ were in effect during the three-year term of the

original catheter contract and during most of the renewal period.

### D.     The Blanket Objection at Issue

On December 19, 2008, Plaintiff served Defendants with her First Request for Production

of Documents.[9]  Defendants Novation and VHA timely responded.[10]

Defendants asserted 15 "General Objections." PA 41-44 (Defs. First RFP Resp. at 1-4).

One General Objection provided that Defendants refused to produce any documents not

specifically related to the BD catheter contract.  General Objection 11 stated:

> Defendants object to any request calling for the production of
> documents unrelated to the IV Catheter Contract, the only contract
> at issue in this case, and outside the time-period during which this
> contract was in effect (i.e., 1999-2002).  To the extent the requests
> seek such information, they are overly broad, unduly burdensome,
> and not reasonably calculated to lead to the discovery of
> admissible evidence.  [PA 44.]

In addition to this objection, Defendants asserted a corresponding objection following all

but nine of the document requests: "Defendants object to this request on the ground that it is

overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably

calculated to lead to the discovery of admissible evidence." PA 44-59 (Defs. First RFP Resp. at

1, 4-15, 18-21, 24-27, 29-45, 47-55, 57).

In a subsequent letter, Plaintiff's counsel asked Defendants to identify the aspect of

Plaintiff's requests that prompted Defendants' overbreadth, burden, and irrelevance objections

---

[8] PA 67-73 (NOV004794-4800).

[9] PA 12-39 (Plaintiff/Relator Cynthia I. Fitzgerald's First Request for Production of Documents to Defendants
Novation, LLC and VHA, Inc. ("Pl. First RFP")).

[10] PA 40-60 (Defendants Novation, LLC and VHA, Inc.'s Objections and Responses to Plaintiff/Relator
Cynthia I. Fitzgerald's First Set of Requests for Production of Documents ("Defs. First RFP Resp.")).

and requested whether documents had been withheld for each request on these grounds.

Defendants' counsel responded that the objection was prompted by the fact that Fitzgerald's

requests were not all limited to documents specifically related to the BD catheter contract.[11]

Defendants' counsel did not respond whether Defendants had withheld documents on these

grounds.[12]

## III.   ARGUMENT

### A.   Legal Standards

"The discovery provisions of the Federal Rules of Civil Procedure ... are to be broadly

and liberally construed." *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973).

Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to

any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). "Courts have traditionally construed

'relevance' broadly:  information is relevant if it 'encompass[es] any matter that bears on, or that

reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"

*Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). "Unless it is clear that the information

sought can have no possible bearing on the claim or defense of a party, the request for discovery

should be allowed." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005).

"The party resisting discovery bears the burden to clarify and explain its objections and to

provide support for those objections." *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 2009

---

[11] PA 62 (e-mail dated April 24, 2009 from Bill Sims to Jeff Sprung).

[12] Reflecting the reflexive and improper nature of Defendants' blanket objection, Defendants' statement does not explain why the objections were asserted for many requests that sought documents related *exclusively* to the catheter contract. These same objections were asserted, for example, in response to RFP 4, which stated in its entirety:  "All documents, whether oral or written, between Novation and VHA related to Contract No. MS8020B." PA 45 (Defs. First RFP Resp. No. 4); *see also* PA 44-45, 51-52, 54-59 (Response Nos. 1, 5, 29, 30, 40, 47, 48, 49, 50, 51, 53, 55). Defendants' should explain in their response to this motion whether they withheld documents on these grounds for reasons other than a purported lack of connection to the catheter contract. If they do not, Plaintiff requests that the Court order them to do so, because "[b]road-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request." *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006).

- 7 -

U.S. Dist. LEXIS 30970, at *44-45 (S.D. Tex. Mar. 19, 2009); *see also Waffle House*, 227 F.R.D. at 470-71. The objecting party must "demonstrat[e] that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999).

Boilerplate or "general objections" are inadequate. *Enron Corp.*, 2009 U.S. Dist. LEXIS 30970, at *45. "[T]he 'party resisting discovery "must show specifically how ... each [request] is not relevant or how each question is overly broad, burdensome or oppressive."'" *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982)). "A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Id.* (citations omitted); *see also Enron Corp.*, 2009 U.S. Dist. LEXIS 30970, at *46.

The broad scope of discovery must be enforced particularly in fraud cases, where more subtle circumstantial evidence plays a prominent role. "Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence." *Walker v. Federal Deposit Ins. Corp.*, 970 F.2d 114, 122 (5th Cir. 1992); *accord Roland v. United States*, 838 F.2d 1400, 1402-03 (5th Cir. 1988).

**B.**     **The Court Should Compel Defendants to Comply With Their Discovery Obligations**

    **1.**     **Documents relating to Defendants' compliance efforts are relevant to their state of mind even if they do not specifically relate to the BD catheter contract**

        **a.**     **The False Claims Act's scienter standard**

Under the False Claims Act, one element Fitzgerald must prove is that Defendants assisted in causing false certifications with the requisite scienter. Order [on Motions to Dismiss] dated September 17, 2008 at 12, 13 (Dkt. No. 152); *United States v. Medica-Rents Co.*, 285 F. Supp. 2d 742, 769 (N.D. Tex. 2003). The FCA's scienter provision imposes liability on a person who "knowingly causes" a false claim for payment. *See* 31 U.S.C. §§ 3729(a)(1), (a)(2), (a)(7). "Knowingly" means that a person, with respect to information:

> (1) has actual knowledge of the information;
> (2) acts in deliberate ignorance of the truth or falsity of the information; or
> (3) acts in reckless disregard of the truth or falsity of the information,
> and no proof of specific intent to defraud is required.

31 U.S.C. § 3729(b).

Discovery to date suggests that Defendants solicited and accepted payments from BD, ▄▄▄▄▄▄▄▄▄▄▄▄▄▄, in exchange for the award of the catheter contract. *See infra* at 3-5. If done knowingly, these payments caused the hospitals and health care providers who purchased items under the catheter contract to submit false claims for reimbursement to Medicare in violation of the False Claims Act. Order [on Motions to Dismiss] dated September 17, 2008 at 13-14 (Dkt. No. 152).

        **b.**     **The requests at issue**

In order to assess Defendants' state of mind, Fitzgerald requested several categories of documents. These included whether Defendants maintained any compliance program related to

the safe harbor under the Medicare anti-kickback statute to ensure they complied with that

statute.  The relevant requests are:

> RFP 19: All documents related to the GPO safe harbor or
> marketing fees or other monies paid to Novation or VHA by
> medical supply vendors prepared by an employee with any
> responsibility for reviewing, monitoring, recording, or analyzing
> Novation's or VHA's compliance with the requirements of the
> GPO safe harbor.

> RFP 20: All documents prepared by or at the direction of any
> employee of the compliance or legal departments of Novation or
> VHA related to the GPO safe harbor or marketing fees or other
> monies paid to Novation or VHA by medical supply vendors.
> [PA 27.]

### c.    Defendants' compliance documents are relevant and must be produced

Defendants' internal reports regarding the legal compliance of their alleged policy to

solicit payments in exchange for contract awards are relevant to whether they knew, recklessly

disregarded, or deliberately ignored the requirements applicable to such payments.  These reports

may question the legality of Defendants' practices, reflect that Defendants chose not to address

the legal requirements, or show that Defendants failed to correct known problems.  If Defendants

maintained no compliance program at all while violating the anti-kickback statute, a fact-finder

may conclude that this failure constitutes recklessness or deliberate disregard.  In fact, Novation

represented to Congress that it had a "compliance program … monitored and enforced by

Novation's Board of Directors and executive management team."[13]  In short, Defendants'

compliance reports may show that, in following the alleged payment-solicitation policy in the

case of the BD catheter contract, Defendants had the requisite state of mind to violate the False

Claims Act.

---

[13] PA 95-98 (Novation Operating Principles Submitted to the United States Senate Committee on the Judiciary, Subcommittee on Antitrust, Competition and Business and Consumer Rights at 6 (Aug. 8, 2002)).

Further, Defendants dispute that they solicited or accepted payments in exchange for contract awards. Answer, ¶¶ 116-17. Defendants' internal compliance reports may corroborate the payment-solicitation policy that Fitzgerald alleges and are therefore relevant.

For the most part, Defendants refused to produce documents responsive to these two requests. Defendants limited their responses to those documents that specifically related to the BD catheter contract. PA 48-49 (Defs. First RFP Resp., Resp. 19, 20). If compliance reports exist that do not specifically relate to the BD catheter contract, Defendants refused to produce them (or even acknowledge or deny their existence).

Defendants may not unilaterally restrict the way Plaintiff proves they had the requisite state of mind. A compliance report showing Defendants' recognition that the payment-solicitation policy or their reporting practice may violate the anti-kickback statute is relevant to their knowledge, recklessness, or deliberate disregard, regardless of whether it pertains specifically to the catheter contract. If a compliance report acknowledges that a *practice* violates the law, it is relevant to a defendant's knowledge with regard to each time it implements the practice. Further, it is relevant to the existence of the alleged policy or practice. To cite an example, a plaintiff trying to prove that Bernard Madoff knew he was perpetrating a Ponzi scheme is not limited to Madoff's internal analyses of his scheme only if they specifically mention the plaintiff's investment.

      d.     **Defendants' broad-based and non-specific objection should be overruled for the independent reason that it does not comply with Rule 34's specificity requirement**

Defendants asserted a "General Objection" refusing to produce any documents "unrelated to the IV Catheter Contract, the only contract at issue in this case, and outside the time-period during which this contract was in effect (*i.e.*, 1999-2002)." PA 43 (Defs. First RFP Resp., General Objection 11). This blanket objection is overbroad, because *some* documents outside

- 11 -

the time period of conduct at issue, or not specifically related to that conduct, are routinely deemed relevant.[14] Defendants' objection is particularly improper because the responsive documents at issue are compliance reports, company-wide policies and practices (*see infra* at 12-16, 17-18), and training materials and company procedures (*see infra* at 14-17) that typically would relate to a challenged practice but not to any single implementation of the practice.

Further, because such blanket objections are overbroad and do not respond "to each item," Fed. R. Civ. P. 34(b)(2(B), they are improper. *See supra* at 8; *Cappetta v. GC Servs. Ltd. P'ship*, 2008 U.S. Dist. LEXIS 103902, at *6-11 (E.D. Va. Dec. 24, 2008); *Stevens v. Federated Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 51001, at *12 (N.D. W. Va. July 25, 2006); *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D. Cal. 2005); *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 297 (E.D. Pa. 1980).

The Court should overrule Defendants' objections to RFPs 19 and 20.

   2.   **BD payments to Novation contemporaneous with, or explicitly to induce, other contract awards support an inference that BD's cash payments and the award of the catheter contract are connected**

        a.   **The requests at issue**

Fitzgerald requested that Defendants produce documents related to any payments BD made to Novation contemporaneous with awards of contracts to BD. The payments were defined to include money, goods, or services. The pertinent requests were:

> RFP 31: All documents related to payments for any purpose from Becton Dickinson to Novation or VHA within 120 days preceding or following the award of a contract to Becton Dickinson. You may exclude from this request payments of fees for the purchase by a Novation or VHA customer of a specific item under a Novation or VHA contract.

---

[14] *See, e.g., In re Fosamax Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 44323, at *7-8, 26-30 (S.D.N.Y. June 5, 2008) (compelling production of documents from periods both before and after dates on which plaintiffs consumed drugs causing alleged injuries as relevant to scienter and causation).

> RFP 52: For the period January 1, 1997 to December 31, 2002, all documents related to payments by Becton Dickinson of money, goods, or services to Novation, VHA, or any hospital that purchased items under Contract No. MS8020B, including but not limited to stock, stock options, other securities, sponsorships, educational grants, free goods, patronage coupons or fees, trade show fees, or payments for leadership councils. [PA 30, 36.][15]



Discovery has shown that BD ███████████████████████████ ███████████████████. PA 5-6 (NOV001495-96). ███████████ ███████████████████████████████████. PA 8-9 (BDCF 00004766-67). ███████████████████████████████████████ ███████████████████████████. PA 11 (BDCF 00006957).

Defendants again refused to produce most documents responsive to this request. They unilaterally restricted their response to those documents "that relate to the IV Catheter Contract, if any." PA 52, 57-58 (Defs. First RFP Resp., Resp. 31, 52).

### b.    BD's other payments contemporaneous with contract awards are relevant, part of the story of this case, and must be produced

BD's up-front payments to Novation in exchange for the award of other contracts tend to prove that its payments upon the award of the contract at issue here, outlined above, were intended as an inducement. If BD made a series of cash and in-kind payments to Novation contemporaneous with the award of other contracts, a fact-finder may be more likely to find a connection between BD's payments around the time of the catheter contract and the award of that contract. Conversely, if BD did not make other payments at the time of other contract awards, a fact-finder may be more likely to conclude that BD's catheter-related payments were isolated and had whatever legitimate business reason Defendants may claim. A pattern of

---

[15] RFP 52 did not exclude the payment by BD of fees to Novation for the purchase by a Novation or VHA customer of a specific item under a Novation or VHA contract. Fitzgerald hereby adopts this limitation with respect to this request.

payments contemporaneous with different contract awards supports the inference of a cause and effect relationship between a payment and a contract award – you pay Novation cash, you get a contract.

Further, these other payments are part of the story of this case. 

. PA 5-6 (NOV001495-96). As a result, BD's various payments to Novation were not for *unrelated* contracts. Instead, the contracts are related by the fact that they were awarded in exchange for a single, consolidated payment. 

is part of the story of the award of the catheter contract. Fitzgerald is entitled to tell the whole story to the jury, and she needs discovery of how                                                          to tell that story.

For these reasons, the Court should overrule Defendants' objections to RFPs 31 and 52.

**3.    Defendants' training materials and policies for the award of contracts are relevant to Defendants' disputed practice of soliciting payments in exchange for contract awards**

**a.    The requests at issue**

The parties dispute whether Novation encouraged Product Managers administering contract awards to solicit payments in exchange for contract awards. *Compare* FAC, ¶¶ 114-115 to Answer, ¶¶ 114-115. To develop additional proof of this, Plaintiff requested documents on (i) Defendants' policies to weigh payments by bidders in awarding contracts and (ii) Defendants' policies and training materials applicable to Product Managers' award of contracts. These were contained in four RFPs:

> RFP 12: All training materials related to the administration of contract awards provided to product managers or product specialists during the period January 1, 1997 to December 31, 1999.
>
> RFP 13: All policies, procedures, and written guidance related to the administration of contract awards provided to product

- 14 -

managers or product specialists applicable during the period
January 1, 1997 to December 31, 1999.

RFP 15: All documents predating January 1, 2000 and analyzing or
recommending that Novation or VHA consider payments proposed
or made by bidders directly to Novation or VHA as a factor for the
award of contracts.

RFP 27: All documents related to the policies or procedures of
Novation or VHA to collect for their own account marketing fees
or other payments from bidders on and awardees of contracts for
the period January 1, 1997 to December 31, 1999. [PA 25-26, 29.]

Again invoking their General Objection, Defendants refused to produce these documents

unless they related to the BD catheter contract. PA 47-48, 51 (Defs. First RFP Resp., Resp. 12,

13, 15, 27).

> **b.** **Defendants' documents containing the standards for awarding**
> **contracts are relevant and must be produced**

The parties have a factual dispute whether Defendants had a policy to solicit payments in

exchange for contract awards. Policies and procedures and training materials that set out the

standards applicable to the award of contracts obviously are relevant to this dispute, and this is

true whether or not the materials specifically related to the BD catheter contract. Indeed,

because procurement policies and procedures and training materials are intended to apply to a

number of contracts and not a single one, it would be unlikely that they would relate specifically

to the BD catheter contract. Defendants' arbitrary limitation on Fitzgerald's discovery rights

violates Rule 26's broad discovery mandate. The Court should overrule Defendants' objections

to RFPs 12, 13, 15, and 27.

4.    **Defendants' educational materials concerning the anti-kickback statute and the safe harbor are relevant to Defendants' scienter**

a.    **The requests at issue**

Plaintiff requested any training materials or publications Defendants' employees and executives received regarding the anti-kickback statute and the safe harbor.  These requests stated:

> RFP 33: For the period January 1, 1995 to December 31, 1999, all documents related to training or publications received by any Novation, VHA, or Becton Dickinson employee with responsibility for compliance with federal health care laws, including the prohibition on kickbacks contained in 42 U.S.C. § 1320a-7b(b), regarding such laws.

> RFP 34: For the period January 1, 1995 to December 31, 1999, all documents related to training or publications received by any Novation, VHA, or Becton Dickinson executive regarding compliance with federal health care laws, including the prohibition on kickbacks contained in 42 U.S.C. § 1320a-7b(b).

> RFP 35: For the period January 1, 1995 to December 31, 1999, all documents related to training or publications received by any Novation or VHA manager with any responsibility for the award of contracts regarding compliance with federal health care laws, including the prohibition on kickbacks contained in 42 U.S.C. § 1320a-7b(b).  [PA 31-32.]

In their responses, Defendants again asserted that these requests were objectionable because they were not related specifically to the IV contract. PA 52-53, 62 (Defs. First RFP Resp., Resp. 33, 34, 35; April 24, 2009 E-Mail from Bill Sims to Jeff Sprung).

b.    **Defendants' educational materials are relevant and must be produced**

Educational materials on federal health care laws applicable to Novation's contract awards that were received by Defendants' personnel are relevant because they may bear on Defendants' scienter.  If the materials contradict Defendants' practices, or if Novation personnel received no training or publications whatsoever on the law, a jury may conclude that Defendants'

violation of the law was reckless or in deliberate disregard.  In addition, these materials are

relevant because they may state that the law is contrary to Defendants' own practices, thus

supporting Plaintiff's claims.  As with Novation's training materials, educational materials on

federal health care law does not likely relate to a single contract, so Defendants' restriction of its

response to catheter-contract-related documents arbitrarily curtails Fitzgerald's discovery rights.

The Court should overrule Defendants objections to RFPs 33, 34, and 35.

> **5.**    **Fitzgerald is entitled to elicit a pattern of ████████████ sponsorship payments by winning bidders to support the inference that BD's sponsorship payment was in exchange for its contract award**
>
> > **a.**    **The requests at issue**

███████████████████  Plaintiff's allegations that she was directed to solicit a

contribution to Novation's intranet, called VHAseCURE.net, from BD, BD made such a

payment, and Novation created gold, silver, and bronze "sponsorship" levels to recognize

bidders' contributions.  *See infra* at 5.  If these sponsorship payments were solicited or made to

obtain contracts, they constitute kickbacks under established law.  Order [on Motions to Dismiss]

dated September 17, 2008 at 13 (Dkt. No. 152).

Fitzgerald served RFPs to determine if other winning bidders were required to, and did,

make sponsorship payments for VHAseCURE.net.  These were:

> RFP 8: All documents related to sponsorships or other payments by Becton Dickinson or other medical supply manufacturers to support or assist VHAseCURE.net.
>
> RFP 10: All lists recording payors of money (excluding Novation and VHA) to support or assist VHAseCURE.net, the amounts or dates of such payments, and whether such payors were bidders or awardees of VHA or Novation contracts.
>
> RFP 11: All documents related to solicitations made to bidders for Novation contracts to contribute to the VHAseCURE.net project during the period January 1, 1997 to December 31, 1999.

Defendants objected to these requests because they were not related to the catheter contract.
PA 46, 62 (Defs. First RFP Resp., Resp. 8, 10, 11; April 24, 2009 E-Mail from Bill Sims to Jeff
Sprung).

      **b.**    **Documents showing a pattern of VHAseCURE.net sponsorship
payments by winning bidders are relevant and must be produced**

These discovery requests are relevant because a fact-finder could conclude from the fact
that many or all winning bidders made these payments that they were viewed by Novation or the
bidders as a condition for contract awards.  If so, a jury obviously would more likely conclude
that ████████████████████████████████████████████████████
████ .  Plaintiff cannot establish the existence of such a pattern if Defendants are permitted to
limit her discovery rights to the catheter contract only.  For this reason, the Court should overrule
Defendants objections to RFPs 8, 10, and 11.

**C.**    **Defendants' Discovery Delays Require an Extension of the Deadlines for Fact and
Expert Discovery**

An extension of the deadline for fact and expert discovery is required for three reasons:
(1) Defendants have not yet begun to produce electronically stored information in response to
Plaintiff's First RFPs, which were served roughly six months ago on December 19, 2008;
(2) Defendants have improperly refused to produce relevant documents in response to Plaintiff's
First RFPs, necessitating this motion to compel; and (3) Defendants have refused to produce
corporate designees to respond to Plaintiff's April 10, 2009 Rule 30(b)(6) Notice of Deposition
until June 9, 2009, 24 days before the close of fact discovery.  Defendants' delays have made it
impossible for Plaintiff to complete fact discovery by July 3 and serve expert reports on July 31.

Plaintiff's First RFPs expressly defined "documents" to include all computer-generated,
stored, or maintained information. PA 14 (Pl. First RFP, Definitions ¶¶ 3, 4). Defendants
finished producing documents in response to the First RFPs – approximately 4,538 pages – on

- 18 -

February 20, 2009. PA 2 (Sprung Decl., ¶ 12). Upon reviewing Defendants' production, it became clear that Defendants had produced little if any electronically stored information ("ESI"). Consequently, on March 24, 2009, Plaintiff inquired whether Defendants had searched for ESI. Defendants did not respond, however, until April 24, at which time they disclosed that they were still searching for ESI. None has been produced yet, six months after Fitzgerald's requests and with less than two months left for fact discovery. PA 3 (Sprung Decl., ¶ 13).

Further, as shown above, Defendants have improperly restricted the scope of all discovery to only those documents specifically related to the catheter contract. Consequently, an unknown (but likely large) number of documents responsive to the First RFPs have not yet been produced. Defendants have asserted the same blanket objection to Plaintiff's follow-up discovery requests and her subpoena *duces tecum* to Novation affiliate HealthCare Purchasing Partners, Inc., whose customers also purchased BD products under the catheter contract. PA 3 (Sprung Decl., ¶ 15). Those improperly withheld documents need to be produced and reviewed, and Plaintiff will then use the relevant ones to depose Defendants' key employees.

Finally, Plaintiff served Defendants with a Rule 30(b)(6) notice on April 10, 2009, noting the depositions for April 23. PA 100-105. Defendants have insisted, however, that they need two months to produce their corporate designees. PA 3 (Sprung Decl., ¶ 16). Thus, even these first, preliminary depositions will not occur until less than a month before the current close of discovery.

These discovery delays are no fault of Plaintiff, who served her First RFPs even before the Court issued the Scheduling Order and promptly raised deficiencies in Defendants' responses. Despite her demands, Plaintiff has been required to file this motion to compel and wait two months to take her first deposition.

- 19 -

The current deadline for completion of fact discovery is July 3, 2009, and Plaintiff's Fed.

R. Civ. P. 26(a)(2) reports are due on July 31, 2009.  Scheduling Order at 2 (Dkt. No. 170).

Defendants' delays have rendered these deadlines untenable.  Plaintiff respectfully requests that

the Court extend the deadline for completion of fact discovery by 90 days and the expert-related

deadlines by 30 days.  Further, Plaintiff requests that the Court compel Defendants to produce

responsive ESI and other documents in conformity with the Court's Order on this motion within

14 days of that Order.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Fitzgerald's motion to compel and for

extension of the deadline for the completion of fact and expert discovery.


Dated:  May 11, 2009                             HAGENS BERMAN SOBOL SHAPIRO LLP


                                                 By _____ **s/ Steve W. Berman**_____
                                                     Steve W. Berman
                                                     Jeffrey T. Sprung
                                                 1301 Fifth Ave., Ste. 2900
                                                 Seattle, WA 98101
                                                 (206) 623-7292

                                                 PHILLIPS & COHEN LLP
                                                 Mary Louise Cohen
                                                 Peter Chatfield
                                                 Mary A. Inman
                                                 131 Steuart St., Ste. 501
                                                 San Francisco, CA 94105
                                                 Tel: (415) 836-9000

HILL & HILL, PLLC
Robert J. Hill (State Bar No. 09652100)
1317 F Avenue
Plano, TX  75074
Telephone:  (972) 424-1026
Facsimile:  (469) 241-9356
Email:  rhill@um.att.com

Attorneys for *Qui Tam* Plaintiff/Relator
Cynthia I. Fitzgerald

001857-11  302887 V1

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2009, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

William D. Sims (bsims@velaw.com)
Veronica S. Lewis (vlewis@velaw.com)
Vinson & Elkins, LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201

Trevor R. Jefferies (trjefferies@hhlaw.com)
Kent A. Radford (karadford@hhlaw.com)
Hogan & Hartson, LLP
711 Louisiana, Suite 2100
Houston, Texas  77002

Sean R. McKenna
(sean.mckenna@usdoj.gov)
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas  75242

Susan Jean Miller
(susan.miller@oag.state.tx.us)
Assistant Attorney General
Anti-Trust and Civil Medicaid Fraud Division
P.O. Box 12548
Austin, Texas  78711-2548

Glen Grossenbacher (gglaw@swbell.net)
Law Office of Glenn Grossenbacher
1800 McCullough
San Antonio, Texas  78212

Jonathan B. Skidmore
(jskidmore@fulbright.com)
Fulbright & Jaworski
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201

L. James Berglund, II
(james.berglund@tklaw.com)
Jason Murray Davis
Jennifer E. Rudenick
(Jennifer.rudenick@tklaw.com)
Thompson & Knight
1700 Pacific Avenue, Suite 3300
Dallas, Texas  75201

Brian A. Colao (colaob@gtlaw.com)
Hugh E. Hackney (hackneyh@gtlaw.com)
Greenberg Traurig
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201

Larry E. Cotton (lcotten@cottenschmidt.com)
Angela R. Hoyt (ahoyt@cottenschmidt.com)
Cotten Schmidt – Fort Worth
420 Throckmorton Street, Suite 500
Fort Worth, Texas  76102

William Trey C. Dowdy, III
(trey.dowdy@strasburger.com)
Strasburger & Price
901 Main Street, Suite 4400
Dallas, Texas  75250

Christopher S. Maynard
(csmaynard@jonesday.com)
Brian J. Murray (bjmurray@jonesday.com)
Jones Day
2727 N. Harwood Street
Dallas, Texas  75202

John Clark (clark@goodelaw.com)
Goode Casseb Jones Riklin Choate & Watson
2122 N. Main Avenue
San Antonio, Texas  78212

- 22 -

001857-11 302887 V1

H. Campbell Zachry (czachry@hunton.com)
Melissa J. Swindle
(mswindle@hunton.com
R. Heath Cheek (hcheek@hunton.com)
Hunton & Williams, LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202

Darren L. McCarty
(daren.mccarty@alston.com)
Alston & Bird, LLP
2200 Ross Avenue, Suite 4650W
Dallas, Texas  75201

Robert A. Atkins (ratkins@paulweiss.com)
Jacqueline P. Rubin (jrubin@paulweiss.com)
Hannah S. Sholl (hsholl@paulweiss.com)
Paul Weiss Rifkind Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, New York  10019-6064

Thomas N. Tarnay (ttarnay@sidley.com)
Sidley Austin Brown & Wood
717 N. Harwood Street, Suite 3400
Dallas, Texas 75201

Mary A. Inman (mai@pcsf.com)
Michael Brown
Phillips & Cohen, LLP
131 Steuart Street, Suite 501
San Francisco, California  94105

_____ **s/ Steve W. Berman** _____
Steve W. Berman